If it pleases the Court, I am reserving two minutes for rebuttal. So I think what we have here is a situation where the District Court was very focused on looking for aspects that, in her view, were not potentially covered and that the facts leading to a different view were viewed as an inconvenient truth. Specifically, the Court didn't even contemplate the possibility that the distinct liability for misuse of another's advertising idea in your advertisement were even possibly in play, simply because the phrases in some parts of the complaint used the words, confidential, proprietary, and trade secret in a paragraph. There were ones in which only the proprietary information was at issue, and it's clearly a distinct basis for liability. So does the word advertising appear, or some variant of the word advertising appear anywhere in the DICON complaint? No, and that's not relevant because what does appear is the actual websites which are advertising that are referenced. There's no magic formula, and the way the Court's viewing it, it's like, is there a reasonable potential for coverage, which is a New York, not California, standard, which is far more liberal, and it's any potential for coverage. Was there ever any motion made in the DICON case to amend the complaint to add anything beyond what was in the 7221 complaint with the eight causes of action? Not yet, but the case is still in play, and we don't have the pretrial conference order which would supersede the pleadings under Rule 14 as a matter of law. And it's the potential for coverage that is dispositive here, and if you look very carefully at the allegations, and then marry them to the extrinsic evidence, the extrinsic evidence is very critical to view under California law because it can clarify and provide meat on the bones to a case that is not covered by the statute. So, to summarize what is in place previously, I direct the Court's attention to a case cited in the opening brief, Lexington Insurance Co., the MGA Enterprises, and that is a published decision at 9061 F subsecond 536, and specifically 544 and 545 are of interest, and it distinguishes all the cases that the insurer is relying on. It applies California law, and it dealt with one of the most expensive coverage cases in America flowing out of the dispute between Mattel and Bratz. So, there was a lot of very extensive lawyering that went into the litigation of that set of cases, and the level of sophisticated analysis therein is very germane to what we have at issue here. Can I ask you, even if we agree with you that you can look at extrinsic evidence and the extrinsic evidence here showed a potential copyright violation, I'm having trouble figuring out how you get around the knowing violation exclusion because I think the theory that was described in the deposition was really intentional copying of one website onto the other, and if so, why isn't it barred by the exclusion? That's simple, Your Honor. Copyright infringement has no c inter, zero, none. To infringe a copyright cannot, in other words, any c inter is a claim in addition to that. So, it's not a basis for the asserted liability, and that's proof. Sorry, can I stop you? Because I don't understand why we would look at the elements of copyright instead of looking at the language of the insurance policy where it says that it excludes injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another or would inflict personal and advertising injury. That talks about excluding acts taken with knowledge. It doesn't say whether the underlying claims elements have knowledge. I don't understand your answer. Well, if you look at the CGS decision from the Second Circuit applying the New York law to a similar situation and my treaties on knowing violation, you're looking at a distinction that's an indemnity one, as the court did in its analysis. You're assuming that liability as pled will necessarily be proven at trial. We're not there yet. This is a duty to defend its potential coverage, and if there's any possibility Can you explain how, why any information gained from this deposition doesn't get excluded by this exclusion? I don't understand. It doesn't work that way. That information is evidence is a potential for amendment, and the potential for amendment is another thing the court didn't look at. The basic problem is the court doesn't understand offense-based coverage. But if the amendment is something that's excluded, it doesn't help you, so I don't understand. That doesn't work that way. The amendment of the pleading in the underlying case may or may not happen. A pretrial constant order that supersedes the pleadings may not happen, but as pled right now, the extrinsic evidence reveals an element of recovery that are consistent with liability that don't necessarily implicate the knowing violation exclusion, and all the cases we cite are very analogous to those because they suggest there's a pathway that doesn't implicate. It's a very rare case that the knowing violation bars at the defense stage, and the reason is Judge Kraski's thoughtful opinion, Atlantic Mutual v. JLAM, and it basically points out that coverage is triggered by the offense, not the injury or damage. You're excuse me, but I think we're trying to figure out whether this policy might have covered this claim, and I don't understand how any information that was extrinsically given to the insurer suggested conduct causing an injury that would not have been excluded. Do you think that the deposition describes negligent conduct instead of knowing conduct? That's not to test, and knowing conduct is covered by this policy. This policy covers malicious prosecution. So in other words, it's not the fact that they had some level of knowledge. They had to have a knowing violation, which is a higher level of C-inter. And the cases that are cited under the knowing violation exclusion analysis clarify that it's a much more than just did they know or did they suspect that the conduct they engaged in could be wrongful. That's not to test. And again, you're focused on what California case is your best case for that. Can you tell me? Well, the etc. I suggest you read etc. very careful, and the case applying California law that I just cited to you, which is Lexington v. MGA. Talks about this knowing violation issue and needing not needing to write and did the let the Lexington case involve a circumstance here where what the court was looking at was not the complaint, but extrinsic evidence. There was absolutely extrinsic evidence in the court noted that it evidenced the potential for amendment. And what you're realizing you've got to focus on is it's not injury or damage. The court was focused on injury or damage. That's not the right analysis of offense based policies. As the Third Circuit and fraud switch case stated many years ago, advertising injury cases have confounded courts for years. And with the district court, it claimed another victim. This is a very different kind of offense based policy and knowing violation is an element that is very rarely found to bar any pleading at the defense stage because of that, because you're necessarily presuming that the allegations will be proven at trial. And if any possibility their claims that are outside the scope of those that would not be based on conduct that would implicate knowing violation that offenses do. The CGS case from the Second Circuit published deals with knowing violation, finds it inapplicable in facts that are not terribly distinct from these here. And I would definitely recommend it because as it views knowing violation, it's very analogous to California law on that issue. So the other point is that in addition to the Saterra case and EPS case, there's a number of other decisions that talk about like Tetraview, like Elcontec, Brannutec, Albers Medical, Lawrence Spencer, that all involve offense F implicated by unfair competition. And the court presumed that there was only a 17-200 claim. She forgot that the Lanham Act encompasses unfair competition claims. So there were unfair competition claims. And again, the liability necessary to prove that is not at play. Also the Dobrin case and Hudson v. Colony are two cases that said sometimes the plaintiff hides in the weeds and doesn't want to articulate in a complaint grounds that might trigger coverage. But when extrinsic evidence such as deposition testimony suggests that there's more going on, that more going on precipitates the right to a defense because the plaintiff is in charge of the complaint allegations, but it can't hide in weeds, wait till trial, say, aha, I can now prove this, eviscerate any possible liability, but also do so in a way that would have been excluded by the coverage if they'd properly followed it. And Dobrin's very helpful in that. It was cited by a Ninth Circuit published decision, Hudson v. Colony. So it's just that you really have to understand the nature of the difference between a focus on whether the offense elements are asserted per Atlantic Mutual v. J. Lanham, and whether those elements in and of themselves implicate liability that would be precluded as a matter of law when the facts not only pled, but in the extrinsic evidence are taking into account in the full analysis of what's potentially covered under the suit. And it's just that's the way the courts have looked at it when they've spent a lot of time looking very carefully at the nature of that liability. And it's like I said, it's a very rare knowing violation case that has ever been held in a California court of cases following similar applications that have found to be in play in that context. Well, Counselor, you're down to about three. Yes, thank you, Your Honor. Did you want to reserve time? I will. I'll reserve the three. Oh, I'll reserve whatever's left. Okay, thank you. Thank you. I'll hear from the appellee. Morning, Your Honors. This is Richard Bremer on behalf of Defendant and Appellee United States Liability Insurance Company. I'm sure I'm not the first appellee to tell you that the district court got things exactly right, but Judge Huff was not fooled by Aram's arguments. And she correctly found that not only that the underlying complaint alleged no potentially covered claim, but even if there had been, and the court didn't even need to get this far, but even if there had been a potentially covered claim, the exclusions applied. And we really only need one or the other to determine USI's duty to defend. What Aram is asking the court to do here is to find the duty to defend grounded entirely within the extrinsic evidence and entirely outside the underlying complaint. And the parties agree there are authorities that say you need to look at, you know, you can look at remote facts buried in the complaint. You don't have to have label causes of action, but there needs to be some allegation in the complaint that you can tie the extrinsic evidence to. Gunderson and its progeny say you can't speculate as to unpleasant claims. No matter what the extrinsic evidence is? Well, there needs to be something that the extrinsic evidence ties to in the complaint that's actually being asserted. And an example we've used in our brief... Let me give you a hypothetical that is not this case. Let's say somebody writes, let's say counsel writes a letter that says, we've discovered some new evidence. We want to settle this case. If we don't settle this case, here's a copy of the amended complaint we're going to file, which adds these new claims. Does that count? That's still totally extrinsic evidence. Would that get you to something that could be considered even outside what's in the complaint? I don't think it would. And this actually ties into a point that I want to raise about this potential for amendment standard. Let's assume that DICON down the road does decide to amend its complaint. And at that time, it would be up to USI to analyze the amended complaint and determine if that complaint presents the duty to defend. But it would not create a retroactive duty to defend the prior pleading. There's no standard, there's no authority that would support that. And so in your hypothetical situation, I think it would be correct for USI, the insurer, I guess the hypothetical insurer to look at the allegations of the new complaint and take a fresh analysis of those to see whether those allegations present a potential for coverage. But that doesn't mean I'm having trouble understanding how what you're saying is consistent with cases from California, like Montrose Chemical versus Superior Court, Cal 4th, 6th Cal 4th, 287 from the California Supreme Court. It seems like that case says even when the complaint doesn't reflect the potential for liability, extrinsic evidence can. And also Hartford Casualty Insurance versus Swift. It seems like the California Supreme Court has said that extrinsic evidence can show a potential for coverage. I think that's right. If the insurer has knowledge that the claimant is going to be asserting those claims in the action. But we don't have that here. And in fact, one of the cases we rely on, which I believe is the, I have to remember the name, I'm sorry, the Microtek case. That case, in that case, the court said that the claimant can specifically plead around, it's in control of the allegations and the claims that it asserts in the action. And it's not for the court to presume what those allegations are. There may be strategic reasons why a claimant is not asserting claims, for example, to avoid insurance coverage for wrongful conduct. This case is very similar to Microtek. And while we're discussing some of the cases, I'll discuss the MGA case that Mr. Gauntlet has cited. That case is 100% the opposite of what we have here. The district court and MGA found a potential for coverage because it specifically noted the complaint alleged that MGA stole, copied, misappropriated, and used Mattel's advertising and marketing plans and strategies. That's not what we have here. Aram keeps citing to proprietary information that's alleged in the DICON complaint. But as the district court noted, every time the phrase proprietary appears in the underlying complaint, it's in the context of one of two, excuse me, two phrases. The five or six times that it appears in the underlying complaint, it always refers to proprietary confidential and trade secret information or proprietary and trade secret information. Those are the two phrases that use proprietary. That can't be advertising. And as Judge Bennett noted, advertising is not referenced in the DICON complaint. The substance of the website is not referenced in the DICON complaint. The only time the website is mentioned is to tie Aram to a predecessor company. There is simply no allegation of advertising injury here. And as USLA points out in its moving papers, based on the claims asserted in the complaint, they can't be. We have claims for misappropriation of trade secrets, unfair competition, intentional interference with perspective of economic advantage, none of which can fit an advertising claim, and all of which imply intentional conduct. Once you get the deposition that talks about copying this website, why don't you, and that's advertising, why don't you have an advertising injury that supports unfair competition or supports one of these other claims? It seems like there could be potential coverage based on this advertising or copyright type injury to support a claim that is in the complaint. So I guess I'd like you to address that, but then also can you respond about how it works to think about this not knowing exclusion, because that's where I think you might have a better argument. Right. And so let me address that first, because I have some thoughts on that. So as we pointed out in our papers, all of the claims that are asserted in the underlying complaint are premised in intentional conduct. It's an element of the claims asserted. The complaint is complete, replete with references to intentional conduct, and we're not asking, we didn't in our motion for summary judgment, we didn't ask the district court to rule on the merits of the underlying claim. We just asked it to look at what was alleged, because the court can't find a potential for coverage as to claims which, if proven, would be excluded under the knowing violation exclusion. And the cases that opposing counsel cited, you disagree with the idea that we only look at how elements of the claims. I mean, I guess you're saying if these are the claims instead of copyright, they do have knowing is the point. Right. And kind of the classic situation where you see there may be a duty to defend is where there's a corresponding negligence claim that's also asserted where there may be a factual question about whether the conduct was intentional or whether it was merely negligent. But based on the causes of action that are alleged here, we don't have that potential. There is no negligence cause of action. There's no alternative basis. All of the actions that arm is alleged to have undertaken that support the claims asserted in the underlying complaint are based on intentional and wanting conduct. And what if so what if they could let's just hypothetically say they amended to there was a copyright claim based on this conduct that is in the deposition? Do you think that then would trigger coverage or would it not? Because the underlying conduct of the copyright would be intentional. Well, we would have to look at the amended complaint to see how it was and undertake a fresh analysis. But as I said before, that wouldn't create a retroactive analysis to the original complaint. And maybe maybe we're back here in a year or two if there is an amended complaint and we still have a disagreement. But that's that's a new analysis. But the complaint to add on to Judge Friedland's question, even in that circumstance, if the allegations were founded upon, for example, intentionally acting and copying with knowledge that it's someone else's, that in your view, then if that were the hypothetical allegation, it would be excluded by the the intentional intentional acts exclusion. Yes, I think that's right. I'm sorry. I think that's right. Because if the conduct that's being alleged is what's proven, it would be excluded. You can't create a potential for coverage based on something that would be excluded if proven. I know I have some time remaining, but unless the court has specific questions, I don't know that I have anything else to argue. Yeah, I have no question, but I have a question. No, thank you for asking, Judge Gould. Okay, then we'll submit. Thank you. This case will be submitted. The parties will hear from us. But wait, we didn't have. Sorry, I said that. Let's go back to the appellant's case. I think your mic is off, counsel. Right now, there are facts that evidence copyright infringement, which is not an intentional tort that could have been established. So liability for infringing copyright in your advertisement is evident. Once that's in play, that's it. We're done. You don't get to see inter until there's indemnity. And there's a case from Judge Snyder, a thoughtful district court judge, KM Strategic Manufacturing LLC v. American Casualty of Reading that's in the materials. And I urge the court to look carefully at the reply brief in this respect and ensure it does not meet the burden of establishing an exclusions application, talking about knowing violation by pointing to unproven and disputed allegations in the is called upon to defend. If there's a fact dispute under a line, ALIGN, we win. A defense arises. You also don't get to look at grounds for denial that are not implicated by the exclusion. Per Waller v. Truck Insurance Exchange, before even considering exclusions, the court must examine the covered provision to determine whether a claim falls within the policy terms. So if you found potential coverage for copyright infringement from a combination of the fact allegations in the complaint, which include breach of fiduciary duty and unfair competition, the court utterly ignored in the opinion, find that they raise potential coverage either for a misuse of an advertising idea under Offense F or infringing copyright in Offense G, you have to establish that an exclusion eviscerates any possibility of coverage as to those offenses. If you do not, there's still a duty to defend. And there is no, no intentional acts exclusion in this policy. And so asserting it and treating the knowing violation as if it was inconsistent. In CGS, the court stated, and that's the Second Circuit case, despite the boilerplate allegations of willful misconduct, 5-4's Lanham Act actions for a 43-A claim do not require it to prove that CGS intended to infringe on its trademark. As such, a claim does not require proof of intent to deceive. Our inquiry ends here, as at least one of the claims in the underlying action did not require intent based on implication of not knowing falsity. Charter was required to defend the entire action. This is a very nuanced area of law. Offense-based policy analysis has troubled courts for years, as Third Circuit Chief Judge stated, you really have to look very carefully at the interaction of all these elements. I urge you to look very carefully at the reply brief. And what you're going to find is the district judge and counsel didn't understand the nature of this coverage. They attacked issues in a way that are not germane or not good law in California. And I therefore believe that defense was owed and that the extrinsic evidence is key to analyze in this context. Okay, counsel, thank you. I think your time is... It is up, your honor. That's correct. Okay. We will therefore have this case now submitted and the parties will hear from us in due course. Again, I want to thank both counsel on both sides for their excellent arguments and also for being willing to show up for remote arguments at this time when there's been so much devastation in your communities. Thank you, your honor. Your next case is submitted.
judges: GOULD, FRIEDLAND, BENNETT